**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TAI MATLIN and JAMES WARING., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SPIN MASTER CORP.; SPIN MASTER LTD.; )<br>SWIMWAYS CORPORATION; and KELSYUS, )<br>LLC )<br>)<br>Defendants. )<br>)<br>) | Case No. 1:17-cv-07706<br><br>Hon. Virginia M. Kendall |

**DEFENDANTS SPIN MASTER CORP., SPIN MASTER LTD., AND SWIMWAYS
CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND FOR IMPROPER VENUE**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), defendants Spin Master Corp., Spin Master Ltd., and Swimways Corporation (collectively "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss for lack of personal jurisdiction and improper venue.

**I.      INTRODUCTION**

Plaintiffs Tai Matlin and James Waring assert a number of claims against Defendants allegedly arising out of an agreement Plaintiffs entered into nearly twenty years ago with their former employer. None of the Defendants is a party to this agreement or has assumed any obligations under this agreement, and all of Plaintiffs' claims are barred by binding rulings issued in multiple arbitration proceedings between Plaintiffs and their former employer. In short, Plaintiffs' claims are baseless, both in law and fact.

In addition, Plaintiffs have not shown and cannot establish that this Court has jurisdiction over any of the Defendants in this matter. Accordingly, Defendants move to dismiss because personal jurisdiction with respect to each defendant is lacking in this Court and venue is improper. Defendants do not have sufficient contacts with Illinois to sustain general jurisdiction. Further, Plaintiffs' claims do not arise out of any of Defendants' contacts with the forum, and Plaintiffs thus cannot establish specific jurisdiction over any of the Defendants in this suit.

## II.  FACTUAL BACKGROUND

The motion is based on the Declarations of David Arias ("Arias Decl.")[1] and Christopher Harrs ("Harrs Decl.")[2] and the allegations of the Amended Complaint and associated documents (Doc. 19; *see also* Doc. 1). Any allegations in the Amended Complaint are assumed to be true solely for the purposes of this Motion to Dismiss.

The present lawsuit is the latest in a long line of proceedings brought by plaintiffs Matlin and Waring seeking compensation they claim they are owed under a 1999 agreement (the "Withdrawal Agreement") entered into with a former employer, Gray Matter Holdings, LLC, which was later renamed 180s, LLC ("180s"). The agreement provides, *inter alia*, that (i) certain identified products and the associated intellectual property rights were the exclusive property of 180s, (ii) Matlin and Warring assigned any intellectual property rights they may have or that may arise in the future with respect to these products to 180s, and (iii) Matlin and Waring were owed certain compensation resulting from licensing revenues and sales revenues received by 180s from the licensing or sale of these products. Doc. 19-1 at §§ 2.1, 3.1, 3.4. None of the named defendants is a party to this agreement, and accordingly, none of the named defendants participated in the negotiation or performance of this agreement. From the face of the

---

[1] Attached as Exhibit A to this Memorandum.
[2] Attached as Exhibit B to this Memorandum.

agreement, however, it appears that performance was anticipated to occur primarily in the Baltimore, Maryland area. *See id*. at § 4.1, Exhibit D. The agreement also includes a forum selection clause, in which the parties to the agreement—*i.e.*, Matlin, Waring, and 180s—agreed to submit to the personal jurisdiction of any court of competent jurisdiction in the State of Delaware, as well as a choice of law provision selecting Delaware law to govern the agreement. *Id*. at §§ 4.3, 5.1.

In 2003, one of the named defendants, Swimways Corporation ("Swimways"), entered into an asset purchase agreement with 180s that included, *inter alia*, a purchase of the rights to the products and intellectual property that had been identified in the Withdrawal Agreement. The asset purchase agreement between 180s and Swimways unambiguously provides that Swimways assumed no contractual obligations or liabilities of 180s outside of those contracts that were expressly identified in the agreement; the Withdrawal Agreement between 180s and Matlin and Waring was ***not*** one of the contracts assigned to Swimways. *See* Doc. 1-2[3] at §§ 1, 2(b), Exhibit A. The asset purchase agreement also provides that notices or communications regarding the agreement should be provided to addresses in Baltimore, Maryland (if to 180s) or Virginia Beach, Virginia (if to Swimways). *Id*. at § 8(g). Plaintiffs Matlin and Waring are not parties to this asset purchase agreement and did not participate in its negotiation or performance.

Over the course of four separate arbitrations, Plaintiffs have litigated with 180s over the meaning of the Withdrawal Agreement, the effect of the asset purchase by Swimways on this agreement, and the compensation owed to Matlin and Waring by 180s under this agreement. Having exhausted their ability to demand additional compensation from 180s, Plaintiffs have now sued Defendants asserting claims of breach of contract, fraud, and unjust enrichment.

---

[3] Exhibit 2 to the original Complaint (Doc. 1-2) was placed under seal pursuant to this Court's minute entry of November 6, 2017. *See* Doc. 8.

In their breach of contract claim, despite the clear language in the Swimways asset purchase agreement and binding arbitration rulings to the contrary, Plaintiffs allege that Swimways assumed the obligation of paying royalties to Matlin and Waring pursuant to the Withdrawal Agreement and has breached this obligation. *See* Doc. 19 at ¶¶33-34, 84-87. Regarding their fraud claim, Plaintiffs allege that 180s recorded purportedly forged assignment documents with the USPTO, that Plaintiff Matlin contacted counsel for Swimways to notify Swimways of this purported forgery, and that Swimways continued to file patent applications related to earlier applications connected to the putatively forged assignments without notifying the USPTO of Matlin's allegations. *Id*. at ¶¶40-57. Plaintiffs fail to allege any false statement made by Swimways to Plaintiffs (as opposed to the Patent Office). Plaintiffs also fail to allege any communications whatsoever between Plaintiffs and defendants Spin Master Corp. and Spin Master Ltd.

> Regarding personal jurisdiction over the Defendants, Plaintiffs allege that:
>
> This Court has personal jurisdiction over the Defendants because each Defendant has substantial contacts with this forum as a result of business conducted within the state of Illinois and within this District and the fraud alleged herein occurred in part in this district. Specifically, all defendants conduct transactions with or through customers or other third parties that originate, occur and/or terminate in whole or in part within this District. Defendants also market and sell various products, including pool toys, floats and games within this District.

*Id*. at ¶13. Plaintiffs further allege that venue is proper in this District under 28 U.S.C. § 1391. *Id*. at ¶14.

Defendant Swimways is a corporation organized under the laws of Virginia with a principal place of business in Virginia Beach, Virginia. Ex. A at ¶2. Defendant Spin Master Corp. is a holding company organized under the laws of Canada with a principal place of business located in Toronto, Canada. Ex. B at ¶¶2, 4. Defendant Spin Master Ltd. is also a company organized under the laws of Canada with a principal place of business located in

4

Toronto, Canada. *Id*. at ¶3. Spin Master Corp. is a holding company that owns Spin Master, Ltd. *Id*. at ¶4. Neither of the Spin Master defendants directly makes, sells, or advertises products in the United States. *Id*. at ¶9. These actions are carried out by various Spin Master subsidiaries. The Spin Master defendants are indirect shareholders of defendant Swimways, which holds its own intellectual property. No Spin Master entity sells any Swimways products. *Id*. at ¶5. Swimways does not directly make, sell, or advertise any products specifically to consumers located in the state of Illinois. Ex. A at ¶6.

None of the Defendants maintains any offices or owns any property or assets in Illinois. Ex. A at ¶3; Ex. B at ¶6. Likewise, none of the Defendants has any employees in the State of Illinois, is registered to conduct business in the state of Illinois, or has a registered agent for service of process in Illinois. Ex. A at ¶¶4-5; Ex. B at ¶¶8-9.

### III. ARGUMENT

#### A. Legal Standard on a Motion to Dismiss Under Rule 12(b)(2)

Once a defendant moves to dismiss a complaint based on lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In meeting its burden, the plaintiff's case must include affirmative evidence in support of jurisdiction that goes beyond the pleadings. *See id.* at 783. While the court, without an evidentiary hearing, is entitled to resolve all factual disputes in favor of the plaintiff, the court must also accept uncontroverted evidentiary facts presented by the defendant as true. *See Compliance Software Solutions, Corp. v. Moda Tech. Partners, Inc.*, No. 07-CV-6752, 2008 WL 2960711, at *1 (N.D. Ill. July 31, 2008).

### B.  Plaintiffs Cannot Establish that This Court Has Personal Jurisdiction Over Defendants

Personal jurisdiction does not exist over any of the Defendants in Illinois. A federal district court has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction. *See RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1275-1276 (7th Cir. 1997). To determine whether personal jurisdiction exists over a nonresident party in Illinois, a court considers the Illinois long-arm statute, the Illinois constitution, and the federal constitution. *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Because "Illinois extends personal jurisdiction to the limits allowed by the United States Constitution, [] the state and federal standards are congruent here." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). Under the Due Process Clause of the Fourteenth Amendment, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR,* 107 F.3d at 1277.

Personal jurisdiction can be either general or specific, depending on the level of a defendant's contacts with the forum state. *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). While Plaintiffs fail to specify whether they are alleging that Defendants are subject to general or specific personal jurisdiction, *see* Doc. 19 at ¶13, this deficiency is ultimately of no consequence, as Plaintiffs cannot establish that any of the Defendants are subject to jurisdiction in Illinois under either branch of due process personal jurisdiction jurisprudence. Accordingly, this Court should grant Defendants' Motion to Dismiss.

### 1.  None of the Defendants Has the Continuous and Systematic Contacts with Illinois Necessary to Establish General Jurisdiction

If a defendant is subject to general jurisdiction in a state, "then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the

defendant's contacts with the forum." *uBid*, 623 F.3d at 426. Given these potentially severe consequences, the standard for whether a defendant is subject to general jurisdiction is "demanding," requiring "continuous and systematic" contacts with the forum state such that it can be treated as present in the state for essentially all purposes. *Id*. (citations omitted).

When considering general jurisdiction over foreign corporations, the Supreme Court has recently clarified that "a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systemic' as to render them essentially at home in the forum state." *BNSF Railway Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014)). The Court further explained that the paradigmatic forums in which a corporation is "at home" are (i) its place of incorporation and (ii) its principal place of business, and that the exercise of general jurisdiction over a corporation in a forum outside of these paradigmatic forums may occur only in "exceptional case[s]" where the corporation's contacts with that other forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id*. (quoting *Daimler*, 134 S.Ct. at 761, n.19).

In *BNSF*, the Supreme Court held that the defendant railroad corporation's contacts with the state of Montana, which included ownership of over 2,000 miles of railroad track and more than 2,000 employees in the state, did not give rise to general jurisdiction over this foreign corporation in this forum. *Id*. at 1559; *see also Daimler*, 134 S.Ct. at 752, 760-62 (holding that even if the significant amount of sales and other contacts, including multiple California-based facilities, of a distributor in the state of California were imputable to a foreign defendant auto manufacturer, these contacts were not sufficient to subject the defendant auto manufacturer to general jurisdiction in California); *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 915-16

(N.D. Ill. 2017) (holding that foreign corporate defendant's contacts with Illinois, which included registration to do business in Illinois; holding a Illinois Residential Mortgage License; originating over $215 million in loans in Illinois in 2016; operating at least thirteen branches in Illinois; and employing dozens of people in its Illinois branches, was insufficient to support general jurisdiction over the defendant).

Here, the contacts of each of the foreign Defendants with the state of Illinois are far less substantial than contacts the defendants had with the respective forum states in *BNSF*, *Daimler*, and *Guaranteed Rate*. None of the Defendants is registered to do business in Illinois, owns any property or other assets in Illinois, or has any employees in Illinois. Ex. A at ¶¶3-5; Ex. B at ¶¶6-8. None of the Defendants has a registered agent for service of process in Illinois. Ex. A at ¶5; Ex. B at ¶8. Moreover, neither of the Spin Master defendants makes, sells, or advertises products in Illinois. Ex. B at ¶9. Swimways does not directly make, sell, or advertise any products specifically to consumers located in the state of Illinois. Ex. A at ¶6.

Accordingly, as in *BNSF*, *Daimler*, and *Guaranteed Rate*, the Defendants' respective contacts with the state of Illinois are not so "continuous and systemic" as to render any of them essentially "at home" in the state of Illinois, comparable to a domestic enterprise in this state. *See Guaranteed Rate*, 264 F. Supp. 3d at 915 (citation omitted). None of the Defendants, therefore, is subject to general jurisdiction in Illinois.

### 2. None of the Defendants Is Subject to Specific Jurisdiction in Relation to the Events at Issue

Specific jurisdiction is a function of "the relationship among the defendant, the forum, and the litigation." *Guaranteed Rate*, 264 F .Supp. 3d at 916 (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)). Specific personal jurisdiction is only appropriate when: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed

himself of the privilege of conducting business in that state, [] (2) the alleged injury arises out of the defendant's forum-related activities" and (3) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Because specific jurisdiction requires that the suit "arise out of" or "be related to" the minimum contacts with the forum state, a court may not "simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally required minimum contacts." *RAR*, 107 F.3d at 1277. Here, Plaintiffs have not alleged and cannot allege facts sufficient to show that their claims arose out any of the Defendants' forum-related activities.

First, Plaintiffs cannot establish a connection between any of the Defendants' contacts with Illinois and their breach of contract claim. "In determining whether specific jurisdiction exists for a breach of contract, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to the minimum contacts analysis." *My Canary LLC v. Cessna Aircraft Co.*, No. 16 cv 4000, 2017 WL 201373, at *5 n.4 (N.D. Ill Jan. 18, 2017) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002)). As an initial matter, ***there are no dealings between the parties*** in regard to the disputed contract. None of the Defendants is a party to the Withdrawal Agreement that Plaintiffs allege was breached, and the Swimways asset purchase agreement did not involve any of the Plaintiffs. *See* Doc. 19-1; 1-2.

To the extent that Plaintiffs argue that the Swimways asset purchase agreement creates a link between Swimways and the Withdrawal Agreement, such a link is still insufficient to establish specific jurisdiction over any of the Defendants[4] in this forum. Even assuming,

---

[4] Plaintiffs' breach of contract claim is directed only towards defendant Swimways. Plaintiffs have failed to allege any facts relevant to jurisdiction connecting the Spin Master defendants to the Withdrawal Agreement or the breach of contract claim.

9

*arguendo*, that Plaintiffs have plausibly alleged that Swimways assumed the obligations of the Withdrawal Agreement via the Swimways asset purchase agreement (contrary to the unambiguous provisions of the asset purchase agreement), neither the Swimways asset purchase agreement nor the Withdrawal Agreement provides sufficient connections to Illinois.

The Swimways asset purchase agreement was negotiated, executed, and performed outside of the state of Illinois. It provides, for example, that notices or communications regarding the agreement be sent to addresses in Maryland (if to 180s) and Virginia (if to Swimways). It also contains a forum selection and choice of law provision stating that the agreement shall be governed by and construed under the laws of Maryland and that Maryland courts shall have sole and exclusive jurisdiction and venue to hear and determine disputes arising under the agreement. Doc. 1-2 at §§ 8(g), 8(h); *see also* Ex. A at ¶7. Moreover, although none of the Defendants is a party to the Withdrawal Agreement and therefore cannot speak to its formation or performance, evidence from the face of the document suggests that it was most likely negotiated and anticipated to be performed in the Baltimore, Maryland area. Doc. 19-1 at §4.1, Exhibit D. Further, the Withdrawal Agreement contains a forum selection clause designating the courts of Delaware and a choice of law provision providing that the agreement shall be governed, construed, and enforced under Delaware law. *Id*. at §§ 4.3, 5.1

Next, Plaintiffs' allegation that Defendants "market and sell various products . . . within this District" is also insufficient to give rise to specific jurisdiction in this suit. First, Plaintiffs have failed to allege that any of these products purportedly sold within this District include those that would give rise to royalty payment obligations under the Withdrawal Agreement. This is particularly true for the Spin Master defendants. Swimways owns its own intellectual property, and no Spin Master entity, including the two named Spin Master defendants, sells or markets any

Swimways products. Ex. B at ¶5.

Setting this deficiency aside and assuming, *arguendo*, that such alleged royalty-generating products are sold within Illinois, Plaintiffs still cannot establish that "the alleged *injury* arises out of the defendant's forum-related activities." *N. Grain Mktg.*, 743 F.3d at 492 (emphasis added). First, Swimways does not directly make, sell, or advertise any products specifically to consumers located in the state of Illinois. Ex. A at ¶6. Also notably, Plaintiffs are not injured by the mere sale of alleged royalty-generating products in Illinois. Rather, Plaintiffs' alleged injury arises, if anywhere, from Swimways' decision made at its principal place of business—outside of the state of Illinois—not to pay Plaintiffs royalties on these products.[5]

Turning to Plaintiffs' fraud claim, Plaintiffs baldly allege that "the fraud alleged herein occurred in part in this District." Doc. 19 at ¶13. The Court need not and should not accept this conclusory, unsupported allegation as true, particularly as it is inconsistent with Plaintiffs' other factual allegations regarding this alleged fraud. When determining whether specific jurisdiction exists with respect to tort claims, courts look to whether plaintiff has established: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured in the forum state." *Guaranteed Rate*, 264 F. Supp. 3d at 916 (citation omitted).

First, Plaintiffs have not established intentional and allegedly tortious fraudulent conduct directed towards the Plaintiffs. Plaintiffs' fraud claims rest on allegations that (non-party) 180s

---

[5] Swimways denies that it has assumed any obligations under the Withdrawal Agreement or that it is obliged to pay any royalties or compensation to Plaintiffs. Indeed, two different arbitrators have held in rulings that are binding on Plaintiffs that the Withdrawal Agreement was not assigned to Swimways, that 180s, not Swimways, is responsible for whatever compensation may be due to Plaintiffs, if any, and that Plaintiffs already received from 180s all of the compensation to which they were entitled for 180s' sale of assets to Swimways. *See* Exs. C & D (arbitration awards).

submitted forged assignment documents for certain patent applications to the USPTO (after Plaintiffs had assigned all of their intellectual property rights to 180s); that Plaintiff Matlin contacted Swimways to notify it of these forgery allegations, and that Swimways continued to file patent applications related to these earlier applications without informing the USPTO of the forgery allegations. Doc. 19 at ¶¶40-57. Plaintiffs do not allege any fraudulent conduct or statements made by the Spin Master defendants at all, and thus cannot show that the alleged fraud supports the exercise of personal jurisdiction over these defendants.

Further, Plaintiffs have not plausibly alleged any intentional, fraudulent conduct on the part of Swimways, as they have failed to allege facts sufficient to show that Swimways made a false statement *to Plaintiffs* with the intention to induce Plaintiffs to act and where Plaintiffs took action in justifiable reliance on the truth of the statement, causing them injury. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 681 (Ill. 1989) (reciting elements of fraud in Illinois). In particular, Plaintiffs could not have taken (and have not alleged taking) any action in *justifiable reliance* on the truth of Swimways' failure to inform the USPTO of the alleged forged documents, as Plaintiffs themselves are the ones who believe that these documents have been forged and were the ones who notified Swimways of this belief.

Second, at most, Plaintiffs have alleged that Swimways committed fraud against the USPTO, not against the Plaintiffs. Such alleged fraud would not be expressly aimed at the forum state of Illinois, but rather would have occurred in Virginia, where Swimways and the USPTO are located. *See Royal Sleep Prods., Inc. v. Restonic Corp.*, No. 07 C 6588, 2009 WL 303352, at *9 (N.D. Ill. Feb. 6, 2009) (no indication that tort had occurred in forum state as opposed to states where parties conducted business); *Hanson v. Ahmed*, 889 N.E.2d 740, 745 (Ill. App. Ct. 2008) ("[T]he fact that the plaintiff claimed to have experienced the injury in Illinois is

12

insufficient to establish minimum contacts.").

Further, the alleged fact that Plaintiffs contacted Swimways and its counsel to notify them of Plaintiffs' belief that certain assignment documents were forged is insufficient to establish that the alleged fraud occurred in part in Illinois. *See Guaranteed Rate*, 264 F. Supp. 3d at 919 ("The relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum State." (emphasis in original) (citation omitted)); *Solo Cup Co. v. First Southwest Vending & Food Serv.*, No 07 C 4384, 2008 WL 2787442, at *4 (N.D. Ill. July 17, 2008) ("Unilateral activity on the part of the plaintiff is not sufficient to support a finding of minimum contacts."); *see also* Ex. A at ¶8 (Swimways never initiated contact with Plaintiffs).

Third, Plaintiffs have not alleged that Swimways (or the Spin Master defendants) had knowledge of where Plaintiffs resided or that Plaintiffs would be injured in Illinois.

Finally, regarding Plaintiffs' unjust enrichment claim, under Illinois law, unjust enrichment is a common-law theory of recovery or restitution that arises when a defendant retains an unjust benefit to plaintiff's detriment. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). What makes the retention of a benefit unjust is often some improper conduct that frequently "will form the basis of another claim against the defendant in tort, contract, or statute." *Id*. In circumstances where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id*.

Here, Plaintiffs' unjust enrichment claim rests on the same conduct alleged in support of their fraud and breach of contract claims, either individually or in combination. *See* Doc. 19 at ¶¶90, 92. Accordingly, Plaintiffs' unjust enrichment claim will stand or fall with their fraud and

breach of contract claims. And, for the reasons discussed above, just as Plaintiffs cannot establish specific personal jurisdiction over any of the Defendants with respect to their fraud or breach of contract claims, so too have they failed to establish specific jurisdiction over any of the Defendants for their unjust enrichment claim.

In sum, Plaintiffs have not shown and cannot establish that any of Plaintiffs' alleged injuries arise out of any of the Defendants' forum-related activities, *see N. Grain Mktg.*, 743 F.3d at 492, and thus Plaintiffs have not shown and cannot establish that any of the Defendants are subject to specific personal jurisdiction in Illinois in this matter. Defendants do not have sufficient minimum contacts with the forum, and the maintenance of the suit would offend "traditional notions of fair play and substantial justice" in violation of due process.

### C. Plaintiffs Cannot Establish that Venue is Proper

Plaintiffs allege that venue is proper under 28 U.S.C. § 1391, Doc. 19 at ¶14. This statute provides, in part, that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2), (3). As discussed above, no part (and certainly no substantial part) of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and none of the Defendants is subject to personal jurisdiction in Illinois with respect to this action. Plaintiffs thus cannot establish that venue is proper in this action.

### IV. CONCLUSION

Accordingly, for the reasons stated above, Defendants respectfully request that this Court grant Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.

Respectfully Submitted,

Date: March 26, 2018

OF COUNSEL:

Jonathan G. Graves
Joseph Van Tassel
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Defendants
Spin Master Corp., Spin Master Ltd., and Swimways Corporation*

/s/ Nicole L. Little
Allen E. Hoover (IL 6216256)
Nicole L. Little (IL 6297047)
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Attorneys for Defendants
Spin Master Corp., Spin Master Ltd., and Swimways Corporation*

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Civil Rule 5.5 on March 26, 2018. Any other counsel of record will be served by first class mail.

/s/ Nicole L. Little
Nicole L. Little

*Attorney for Defendants*
*Spin Master Corp., Spin Master Ltd., and*
*Swimways Corporation*