# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TAI MATLIN and JAMES WARING, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 17 C 07706 |
| v. | )<br>) Hon. Virginia M. Kendall |
| SPIN MASTER CORP., SPIN MASTER LTD., and SWIMWAYS CORPORATION, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Tai Matlin and James Waring sued Defendants Spin Master Corp., Spin Master Ltd., and Swimways Corporation alleging fraud and breach of contract against Swimways (Counts I and II), and unjust enrichment against all Defendants (Count III). *See* (Dkt. No. 19). In response, the Defendants filed a Motion to Dismiss for lack of personal jurisdiction and venue pursuant to Fed. R. Civ. P. 12(b)(2), (3). *See* (Dkt. No. 26). For the following reasons the Court grants the Defendants Motion. [26.]

## BACKGROUND

At the center of this litigation are two Illinois residents – Matlin and Waring – who invented two patents, and who founded a company known as Gray Matter Holdings (now known as 180s LLC). *See* (Dkt. No. 19, ¶¶ 7-8, 15, 18, 22). The Spin Master defendants are Canadian companies with their principal places of business and incorporation in Toronto, Ontario, while Swimways is incorporated in and has its principal place of business in Virginia Beach, Virginia. *Id*. ¶¶ 9-11.

In 1999, the Plaintiffs entered into a Withdrawal Agreement ("Agreement") with Gray Matter Holdings that included forfeiture of their salaries and the sale of their partnership shares in the company. *Id*. ¶¶ 22-24. Another clause within the Agreement assigned some of their

1

intellectual property and patent rights for "Key Products" to Gray Matter Holdings in exchange for the retention of rights to royalties from any revenue generated from the sale of the Key Products. *Id*. ¶ 25. After agreeing to the Withdrawal Agreement, the Plaintiffs routinely pursued Gray Matter Holdings in arbitration to enforce unpaid royalties they agreed to receive in exchange for leaving the company. *Id*. ¶¶ 29-30. In 2002, Gray Matter Holding filed an assignment of the Key Products intellectual property rights with the United States Patent and Trademark Office ("USPTO") that allegedly contained Waring's forged signature and without either of the Plaintiffs' knowledge. *Id*. ¶ 40-42. Then in 2003 Gray Matter Holdings entered into an asset sale agreement with Swimways that included rights to the Key Products patents originally held by the Plaintiffs. *Id*. ¶ 33. Since the sale of the Key Products and the related patents, Swimways has not paid the Plaintiffs any royalties from sales involving the Key Products. *Id*. ¶ 63.

Finally, in 2016 Spin Master acquired Swimways and the Key Product intellectual property rights originally owned by the Plaintiffs. *Id*. ¶¶ 64-66. The Plaintiffs subsequently filed suit against Swimways and Spin Master alleging three counts – fraud, breach of contract, and unjust enrichment. *Id*. The pending motion by Defendants seeks dismissal for lack of personal jurisdiction and venue. *See* (Dkt. No. 26).

## **LEGAL STANDARD**

When reviewing a motion to dismiss, the Court must accept "all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 94 (7th Cir. 2007). While a complaint need not allege facts that establish personal jurisdiction, the plaintiff bears the burden of establishing the existence of personal jurisdiction where a defendant moves to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(2). *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In the absence of an evidentiary hearing, the plaintiff need

only make out a prima facie case of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In ruling on a motion to dismiss for lack of personal jurisdiction a Court may consider written materials submitted by the parties and should resolve all factual disputes in the plaintiff's favor. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

Furthermore, the Due Process Clause of the Fourteenth Amendment limits when courts in a particular state may exercise personal jurisdiction over nonresident defendants. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 108 (1987), *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). In Illinois, personal jurisdiction extends "to the limits allowed by the United States Constitution, so the state and federal standards are congruent [in Illinois]." *Philos Techs., Inc. v. Phils & D., Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). Additionally, the Illinois long-arm statute permits the exercise of personal jurisdiction over defendants who commit a tortious act in Illinois. 735 ILCS 5 §§ 2-209(a)(2), (c).

Finally, the Court may dismiss an action based on improper venue. 28 U.S.C. § 1391(b); Fed. R. Civ. P. 12(b)(3). Where venue is improper the court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district [] in which it could have been brought. 28 U.S.C. §1406(a).

## DISCUSSION

**1. Personal Jurisdiction**

"Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). As this matter arises out of common law claims for breach of contract, fraud, and unjust enrichment, there is no federal statute that authorizes "nationwide service of process" and so the Illinois long-arm statute applies. *See* 735 ILCS 5 § 2-209. As such,

personal jurisdiction turns on whether the defendants have sufficient "minimum contacts" with Illinois such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 700-01 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Nat'l Gun Victims Action Council v. Schecter*, 68 N.E.3d 448, 453 (Ill. Ct. App. 2016). Personal jurisdiction over a defendant is based upon the type of contact a party has with the forum state and can be either general or specific. *See Nacionales de. Colubmia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Here, the Court reviews for general and specific personal jurisdiction because it is unclear in their First Amended Complaint whether the Plaintiffs are alleging general or specific jurisdiction, stating only that "[t]his Court has personal jurisdiction over the Defendants because each Defendant has substantial contacts with this forum as a result of business conducted within the state of Illinois and within this District and the fraud alleged herein occurred in part in this district." *See* (Dkt. No. 19, at ¶ 13).

*A. General Jurisdiction*

A court may assert general jurisdiction "over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A corporate defendant is "at home" in states where the corporation has its principal place of incorporation and also where it has its principal place of business. *Daimler AG*, 571 U.S. at 137.

Applied here, none of the Defendants are incorporated in Illinois, nor do any of the Defendants have their principal place of business in Illinois. The only alleged contacts with the forum are the alleged sale of consumer goods via a website to Illinois residents, the advertisement

4

of a position for hire in Illinois by Spin Master, and an alleged agreement regarding the royalty payments. The Spin Mater Defendants are incorporated with their principal place of business in Toronto, Ontario; and Swimway is incorporated and has its principal place of business in Virginia Beach, Virginia. Further, although somewhat disputed, no Defendant has any employees residing in Illinois. *See* (Dkt. No. 26-1, at 8). As best as the Court can tell, the primary source of "continuous and systematic" contacts with the forum state is the sale of products "including pool toys, floats and games" through an online website to interested consumers within the state of Illinois. *See* (Dkt. No. 19, ¶ 13). However activities such as the sale of consumer goods by a foreign company to a resident within the forum without more, such as a principal place of business, are more akin to "sporadic contacts" and are insufficient to establish general jurisdiction. *Tamburo*, 601 F.3d at 701. The Plaintiffs have not met the burden of proving the existence of general jurisdiction, and they admit as much in their Response in Opposition to the Defendants' Motion to Dismiss. *See* (Dkt. No. 29, at 9, 11).

    B. *Specific Jurisdiction*

The Illinois long-arm statute permits a court to exercise personal jurisdiction over non-resident defendants in a manner that is consistent with federal due process standards, therefore requiring the court to consider "whether (1) the nonresident defendant had minimum contacts with the forum state such that the defendant was fairly warned that it may be haled into court there, (2) the action arose out of or was related to the defendant's contacts with the forum state, and (3) it is reasonable to require the defendant to litigate in the forum state." *Kowal v. Westchester Wheels, Inc.*, 89 N.E.3d 807, 813 (Ill. Ct. App. 2017) (citing *Wiggen v. Wiggen*, 954 N.E.2d 432, 437-38 (Ill. Ct. App. 2011)). "At a minimum, the court must find an act by which the defendant purposely avails him or herself of the privilege of conducting activities within the forum state, thus invoking

5

the benefits and protections of its laws." *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 981 N.E.2d 488, 496 (Ill. Ct. App. 2012). "Once a plaintiff has established a defendant's minimum contacts with Illinois, [the Court] must then consider those contacts in light of certain other factors to determine whether the exercise of personal jurisdiction comports with 'fair play and substantial justice.'" *Id*.

The Plaintiffs rely on two theories to establish the existence of specific jurisdiction: (1) the targeting of Illinois residents, either by using an interactive website to advertise and sell its products in Illinois that the Plaintiffs assert were obtained fraudulently, or by seeking to hire a retail sales employee within the State of Illinois; or (2) that the Defendants entered into an agreement with the Plaintiffs in Illinois that is the subject of their Complaint. (Dkt. No. 29, at 4-5, 6, 10-11.) As pled, neither of these arguments is sufficient to establish specific jurisdiction.

Attempts to attach personal jurisdiction via a defendant's use of the internet is an area of increasing interest and has garnered varying results both in Illinois and in federal courts. *See, e.g., Innovative Garage Door Co.*, 981 N.E.2d at 496-97 (discussing a sliding scale approach whereby a court looks at matters such as the purpose of the website in relation to the sale of goods in the forum, and whether the website is the sole fact alleged forming the basis of minimum contacts); *Nat'l Gun Victims Action Council v. Schecter*, 68 N.E.3d 448, 454-55 (Ill. Ct. App. 2016) (distinguishing *Innovative Garage Door Co.* and looking to factors such as who initiated the contact, where a particular contract was formed, and where the performance of the contract was to take place); *Tamburo*, 601 F.3d at 709 (holding that Illinois has specific jurisdiction over non-resident website owners because the plaintiff's injuries "arise out of" defendants web-based contacts with the forum state); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) ("A plaintiff cannot satisfy [specific

6

jurisdiction] simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through the website."). Furthermore, the Seventh Circuit has specifically declined to adopt a jurisdictional test for internet cases. *See Illinois v. Hemi Group LLC*, 622 F.3d 754, 758-59 (7th Cir. 2010). State courts in Illinois look to "whether the quality and nature of the defendant's contacts with the forum are such that it is fair and reasonable to assert personal jurisdiction … whether Internet-related or not." *Innovative Garage Door Co.*, 981 N.E.2d at 496.

Although the Plaintiffs' claim that the Defendants targeted Illinois residents through the advertising and sale of products on its website, "[h]aving an 'interactive website' [] should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website it accessible." *Advance Tactical Ordnance Sysl, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *see also be2 LLC v. Ivanoc*, 642 F.3d 555, 558-59 (7th Cir. 2011). Both *Innovative Garage Door Co.* and *National Gun Victims Action Council* stand for the proposition that the existence of an internet-based website targeting Illinois residents can support the existence of personal jurisdiction, but only where a plaintiff can point to more than the website to support personal jurisdiction. *See Innovative Garage Door Co.*, 981 N.E.2d at 496-97 (finding that personal jurisdiction existed based on an interactive website, specific targeting of Illinois residents, and showing that the conduct forming the basis of the complaint arose out of the internet-related contact); *Nat'l Gun Victims Action Council*, 68 N.E.3d at 456 (finding no personal jurisdiction existed simply because the non-forum defendants used internet communication to obtain contracts with Illinois residents). The "interactivity of a website is … a poor proxy for adequate in-state contacts" and "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply

because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC*, 642 F.3d at 558 (internal citations omitted); *see, e.g., Original Creations Inc. v. Ready American Inc.*, 836 F.Supp.2d 711, 716 (N.D. Ill. 2011) (the lone documented sale to an Illinois resident and the fact that [Defendant] fulfilled that order, intentionally sending the allegedly infringing product into the state, may be been 'purposeful' … [but] that sale alone is an insufficient basis upon which to find personal jurisdiction"); *Gullen v. Facebook*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (general accessibility of website within the forum is insufficient to establish personal jurisdiction).

Although various tests have been applied, the common thread between all courts addressing whether defendants are subject to personal jurisdiction in Illinois for having a website that Illinois residents can access to purchase products is that the mere internet sale from a website in insufficient to hale a defendant into the forum's jurisdiction without something more. Plaintiff attempts to show more by alleging that failure to pay royalties on intellectual property assigned away to a third-party through an unrelated contract is related to the sale of those products through the Defendant's website. Those allegations fail to show sufficient contacts with the forum, however, because they are tangentially related to the sales and have nothing to do with the actual consumer contact on the website that occurs in Illinois. Without availing itself of the laws and protections of the forum, it is unlikely that defendants had any understanding that they could be brought into an Illinois forum. The consumers who purchased goods from the website further would have had contact with the third party contract for royalties. In other words, the maintenance of the website is similar to the email communications in *Nat'l Gun Victims Action Council* in that both are insufficient on their own without more to prove purposeful availment. 68 N.E.3d at 456-57.

Additionally, the Plaintiffs' reliance on *Illinois v. Hemi Group, LLC*, is inappropriate because the Plaintiffs' claims do not arise out of Defendants' contacts with Illinois consumers. 622 F.3d 754 (7th Cir. 2010). In *Hemi*, the foreign-state defendant's online sale of cigarettes to Illinois residents "triggered Illinois' claims against it" by violating an Illinois law requiring that such sales are properly reported. 622 F.3d at 759. There was sufficient relatedness between the defendant, the forum state, and the litigation. *Id*. at 760 ("Illinois courts have a strong interest in providing a forum to resolve a dispute involving *the state* itself") (emphasis added). Here the Plaintiffs claims do not arise out of Defendants relatedness with Illinois – the claims instead pertain to a breach of contract and related fraud allegations growing out of an agreement to pay royalties entered into by the Plaintiffs with Gray Matter. There is little "relatedness" between the Defendants, Illinois, and the litigation.

Furthermore, the Withdrawal Agreement between the Plaintiffs and Gray Matter was the source of considerable arbitration that has long been resolved with the outcome being that Gray Matter owes no further royalty obligations to the Plaintiffs. *See* (Dkt. No. 26-1, at 1, 3); (Dkt. No. 34, at 10 n. 6); (Dkt. Nos. 26-4; 26-5) (the fourth and fifth binding arbitration awards). The Plaintiffs' attempt to ride on the coattails of *Hemi Group* is further impeded by the Supreme Court's subsequent decision in *Walden v. Fiore* where the Court held that a defendant's contact with forum-state residents is not – on its own – sufficient to establish minimum contacts with the forum state itself. *See* 571 U.S. 277, 290 (2014). The appropriate analysis for cases involving intentional torts requires focus on "the relationship among the defendant, the forum, and the litigation." *Id*. at 291. In applying that standard, the relationship between the Defendants, the State of Illinois, and the litigation does not establish personal jurisdiction because the litigation of royalties owed from an agreement with a non-party to the dispute are unrelated to the Defendants

alleged interaction with consumers in Illinois through internet sales of its products. The Plaintiffs include no reference to the existence of a contract between themselves and Swimways, and such, Defendants' contacts with the forum are not related to the underlying litigation.

Similarly, the unjust enrichment claim against Spin Master necessarily arises out of the fraud and breach of contract claims levied against Swimways. As such, where the Plaintiff cannot assert personal jurisdiction against Swimways for fraud and breach of contract, they also fail to establish personal jurisdiction over Spin Master for unjust enrichment claims on the basis that Spin Master acquired the Key Product intellectual property of Swimways.

Plaintiffs' assert that Spin Master "[is] currently hiring a new employee for Retail Sales and Merchandising" in Illinois is based on an internet search showing that Spin Master is, as of February 1, 2018, using a third-party recruiting firm to hire an employee in Elmwood, Illinois. *See* (Dkt. 29, at Ex. D). However, the job posting does not specifically mention Swimways products, nor does it contain any express statement suggesting an intention to target or market products at Illinois residents, and there is no evidence suggesting that Spin Master ever subsequently hired such an employee to work in the State of Illinois. *Id*. Even if true, the hiring of a Spin Master employee in Illinois does not establish personal jurisdiction over a claim of unjust enrichment because the contact with the forum – the hiring of an employee within the State – is not sufficiently related to the benefit derived from unpaid royalties, the source of which were owed to the Plaintiffs by Gray Matter via the Withdrawal Agreement, or as a result of the acquisition of Swimways by Spin Master in 2016. Accordingly, the mere allegation that Swimways maintains a website that advertises and permits sale of its products (seemingly acquired through proper assignments from Gray Matter), or that Spin Master attempted to employ an Illinois resident are insufficient to establish personal jurisdiction over either the Canadian or Virginia-based defendants in the forum.

Second, and as noted above, the specific contacts alleged must be "suit-related conduct" and "the mere fact that [defendants'] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Applied here, the Defendant's alleged conduct – the sale of products such as inflatable water products – does not pertain to the "suit-related" conduct alleged in the case: breach of a contract to pay royalties, fraudulent conveyance of intellectual property, or unjust enrichment. This is so because the breach of contract to pay royalties arises out of the Withdrawal Agreement and prior arbitration decisions found that Swimways bears no obligation to that agreement, and also establishes Swimways assumed no duty to continue paying those royalties set forth in the Withdrawal Agreement. *See* (Dkt. Nos. 26-4; 26-5). The issue of royalty payments would, in fact, be more likely susceptible to the forum where the Withdrawal Agreement was entered into, which in this case appears to be Delaware or Maryland. *See* (Dkt. No. 26, at 10). Swimways and the Spin Master entities were not a party to the Withdrawal Agreement that Plaintiffs entered into with Gray Matter. Because they are not parties to that agreement, they cannot then be haled into an Illinois court on the basis that alleged violations of the Withdrawal Agreement occurred simply because the Plaintiffs (and parties to the agreement) are Illinois residents. The conduct of a plaintiff is not something the Court should consider when determining whether a particular defendant is subject to personal jurisdiction. *See Walden*, 571 U.S. at 284. This notion is bolstered by the fact that neither Defendant was a party to the Withdrawal Agreement to begin with.

As for the invocation of fraudulent and tortious activity as grounds for establishing specific jurisdiction, the Plaintiffs allege that the fraudulent conduct – the forging of intellectual property assignments with the USPTO – targets the Plaintiffs who are Illinois residents and so the Defendants have availed themselves of personal jurisdiction in the State. *See* (Dkt. No. 19, at ¶¶

69-72). This assertion would be true perhaps for Gray Matter, the party to which the Plaintiffs entered into the agreement. The Plaintiffs further allege that Swimways had knowledge of the fraudulent documents and went forward with the assignment of the intellectual property from Gray Matter Holdings despite knowing of the forged documents. *Id.* ¶¶ 73-76. But these allegations, even taken as true for the purpose of the complaint, fail to establish personal jurisdiction under the Illinois long-arm statute.

In Illinois a party must show the following to allege fraud: (1) a statement made for the purpose of inducing a party to act, (2) the party making the statements knows, or should have known, the statement to be false, (3) the party to whom the statement is made is not aware the statement is false, and (4) the party to whom the statement is made must act on the statement to their detriment. *Wilkinson v. Appelton*, 28 Ill.2d 184, 187 (Ill. 1963); *see also Cannon v. Burge*, 752 F.3d 1079, 1093 (7th Cir. 2014).

Yet, the fraudulent activity as alleged originated from a non-party to this dispute. It was Gray Matter Holdings that allegedly forged documents; the forgeries were not directed at the Plaintiffs with intent to induce the Plaintiffs to do anything at all, and they certainly do not implicate the Defendants. *See* (Dkt. No. 19, at ¶ 70). Furthermore, the allegations set forth in the complaint regarding fraudulent activity do not meet the pleading standards sufficient to permit the "who, where, what, why and how" of fraudulent activity of any named Defendants. *See* Fed. R. Civ. P. 9(b); *Vexol, S.A. de C.V. v. Berry Plastics Corp.*, 882 F.3d 633, 637 (7th Cir. 2018). Simply stating that "Swimways learned of the fraud and forgery and ratified Gray Matter's fraudulent acts …" and that "Swimways knew it never had full ownership of the [IP] rights …" are not enough to meet the pleading standards required by the Federal Rules. *See* (Dkt. No. 19, ¶¶ 71, 73). As such, the Plaintiffs fail to meet the burden of showing how the Illinois long-arm statute should apply

personal jurisdiction upon the Defendant Swimways in this matter based on fraudulent conduct. As the fraudulent conduct does not pertain in any way whatsoever to the Canadian Defendants – Spin Master – they too are not subject to specific jurisdiction under the Illinois long-arm statute.

## 2. Venue

Pursuant to applicable venue provisions, venue is appropriate in (1) any forum where the defendant resides; or (2) where a substantial part of events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) … any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. §1391(b)(1)-(3).

As discussed above, the Defendants do not reside in the Northern District and so the first element does not apply. Further, for the same reasons stated above, the Court lacks personal jurisdiction and the Northern District is not "where a substantial part of events or omissions giving rise to the claim" occurred. Even assuming proper venue as a matter of considerable deference to the plaintiff – the Court cannot maintain an action in the absence of personal jurisdiction.

## **CONCLUSION**

For the reasons stated the Court grants Defendants' Motion to Dismiss [26] for lack of personal jurisdiction without prejudice pursuant to Rule 12(b)(2). The Court further grants the

Defendants' Motion to Dismiss for improper venue without prejudice as well for failure to meet any one of the three provisions set forth under 28 U.S.C. §1391(b).

                                                                                                  _____
                                                                   Hon, Virginia M. Kendall
                                                                   United States District Judge

Date: July 20, 2018