IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAI MATLIN and JAMES WARING, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) No. 17 C 7706 ) |
| SPIN MASTER CORP., SPIN MASTER LTD., and SWIMWAYS CORPORATION, | ) Judge Virginia M. Kendall ) ) ) ) |
| *Defendants*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Tai Matlin and James Waring have engaged in a protracted dispute, spanning nearly two decades and four arbitrations, regarding their rights to certain intellectual property and accompanying royalties. Apparently displeased with the outcomes of the arbitration process, Plaintiffs filed this lawsuit against Spin Master Corp., Spin Master Ltd., and Swimways Corporation alleging fraud, breach of contract, and unjust enrichment. At the core of Plaintiffs' First Amended Complaint is their persistent belief that they retained some ownership interest in the intellectual property of certain "Key Products" and that Defendants assumed obligations to provide royalty payments to Plaintiffs as a result of obtaining the rights to the Key Products intellectual property. Plaintiffs' Complaint was ultimately dismissed by this Court for lack of personal jurisdiction (Dkt. 40) and the decision was affirmed by Court of Appeals. (Dkt. 70). Defendants now seek sanctions against

Plaintiffs. (Dkt. 48). Defendants' Motion for Sanctions is granted as Plaintiffs' claims are barred by principles of *res judicata* and the plain language of the governing contracts in dispute.

## BACKGROUND

For purposes of Defendants' Motion for Sanctions, the Court assumes familiarity with the factual background from the parties' briefing on the Motion to Dismiss and as discussed in the Court's Opinion granting the Motion to Dismiss. *See* (Dkt. 40). Unlike the factually deferential standard owed to plaintiffs when deciding a motion under Rule 12(b)(6), the Court need not accept all well-plead facts as true when reviewing a motion for sanctions. *Tobey v. Chibucos,* 890 F.3d 634, 652 (7th Cir. 2018).

## LEGAL STANDARD

Federal Rule of Civil Procedure 11(b) demands that by presenting papers to the court, the party certifies that the filing is formed after a reasonable inquiry and:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Civ. P. 11(b). A frivolous argument is one that is baseless or made without reasonable and competent inquiry and therefore subject to the consequences of Rule 11. *See Berwick Grain Co., Inc. v. Ill. Dep't of Agric.,* 217 F.3d 502, 504 (7th Cir.

2000). Rule 11 "plainly authorizes a district court to sanction a lawyer who without reasonable inquiry tenders a submission that includes legal contentions not warranted…" *Id.* at 504. While the Court does have the discretion to issue sanctions, such authority should be used sparingly in recognition of the impact sanctions can have beyond the merits of the case. *Hartmarx Corp. v. Abboud,* 326 F.3d 862, 867 (7th Cir. 2003). The Court reviews the allegedly sanctionable conduct under a standard of objective reasonableness and considers whether the offending party should have known his position was groundless. *Cuna Mut. Ins. Soc. v. Office and Prof'l Emp. Int'l Union, Local 39,* 443 F.3d 556, 560 (7th Cir. 2006).

## DISCUSSION

### I. Timeliness of Defendants' Motion for Sanctions

As a threshold matter, the Court must first address Plaintiffs' contention that Defendants' Motion should be dismissed as untimely "where Defendants needlessly waited months to raise these issues…" (Dkt. 66, pg. 6). However, Plaintiffs' argument is misdirected, as demonstrated by their resort to non-precedential and out-of-circuit authority. (*Id.* at pgs. 6-7). The fact that Defendants waited until after this Court's ruling on the Motion to Dismiss does not prevent Defendants from properly seeking sanctions. "Postjudgment motions for sanctions are permissible so long as the moving party substantially complies with Rule 11's safe-harbor requirement…" *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.,* 649 F.3d 539, 553 (7th Cir. 2011). Indeed, the 21-day time-frame mentioned in Rule 11 "is a floor, not a ceiling." *Id. at* 552 (holding that a motion for sanctions filed 23 days after the suit

was dismissed, and two years after Rule 11 notice was originally sent, did not violate timeliness concerns).

Defendants alerted Plaintiffs to their purported sanctionable conduct on March 21, 2018, one month after Plaintiffs filed their First Amended Complaint, by sending a memorandum in support of their yet to be filed motion for sanctions. (Dkt. 48-10). Plaintiffs did not heed Defendants' warning and their claims were dismissed without prejudice four months later. (Dkt. 40). Just 26 days after judgment was entered, and 147 days after serving Plaintiffs with a copy of their motion, Defendants filed the instant Motion. (Dkt. 48). Defendants undoubtedly complied with the safe harbor provision of Rule 11 and the timeliness requirements of postjudgment sanction motions. *Matrix IV,* 649 F.3d at 553 ("[W]e have recognized that the 'outer parameters' for filing motions for sanctions after final judgment is 90 days.") Plaintiffs suggest that this perceived delay by Defendants demonstrates bad faith and gamesmanship. To the contrary, the fact that Plaintiffs "had much more 'safe harbor' time before the Rule 11 motion was filed only underscores the fact that [they] had sufficient opportunity to decide whether to dismiss [their] suit in response to [Defendants'] notice." *Id.* at 552.

## II. Preclusive effect of arbitration proceedings

Issue preclusion, or collateral estoppel, operates to prevent "relitigating factual or legal issues if '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is

invoked was fully represented in the prior action [i.e., their interests were represented even if they were not a party in the prior suit].'" *United States ex rel. Conner v. Mahajan,* 877 F.3d 264, 270 (7th Cir. 2017) (quoting *Dexia Credit Local v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010)). The preclusive effect of *res judicata* and its related principles is not limited to the four walls of a courtroom. Rather, prior rulings by an arbitrator are given preclusive effect in later-filed federal litigation. *IDS Life Ins. Co. v. Royal All. Assocs., Inc.,* 266 F.3d 645, 651 (7th Cir. 2001) ("Although res judicata and collateral estoppel usually attach to arbitration awards … they do so (if they do so) as a matter of contract rather than as a matter of law."). Courts will afford even unconfirmed arbitration awards preclusive effect "unless preclusion impinges on the parties' federal rights." *See e.g., Plastic Recovery Techs., Co. v. Samson,* 2011 WL 3205349, at *3 (N.D. Ill. July 28, 2011). Where the rights in question are creatures of a private contractual dispute and not statutory or constitutional rights, issue preclusion bars subsequent litigation. *See e.g., Stulberg v. Intermedics Orthopedica, Inc.,* 997 F. Supp. 1060, 1067 (N.D. Ill. 1998) ("When addressing the preclusive effect of an unconfirmed arbitration award that decided privately negotiated commercial rights, courts are not confronted with the responsibility of protecting federal rights. Thus, courts frequently afford unconfirmed arbitrations preclusive effect on subsequent federal proceedings.").

Here, the operative contract between Plaintiffs and 180s, LLC (formerly known as Gray Matter Holdings—Plaintiffs' former employer) is the Withdrawal Agreement. Section 4 of the Withdrawal Agreement lays out the agreed upon understanding for

how to resolve disputes arising from the contract. Specifically, "any dispute or controversy arising under or in connection with this Agreement…shall…be submitted to *binding arbitration* before a single arbitrator." (Dkt. 19-1, pg. 9) (emphasis added). This provision, combined with the parties' agreement to waive their rights to a jury trial to resolve contractual disputes (*id.* at pg. 11), demonstrates a clear intention by Plaintiffs and 180s for arbitrator decisions to be binding and final. *See IDS Life,* 266 F.3d at 651. Moreover, the First Amended Complaint seeks relief under common law causes of action, not statutory or constitutionally granted rights. *See McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 290 (1984) ("And, although arbitration is well suited to resolving contractual disputes, our decisions … compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights…"). Accordingly, arbitrator rulings regarding disputes under the Withdrawal Agreement can be given preclusive effect in subsequent federal litigation.

### A. Prior arbitration rulings

Defendants argue that the issues raised in the present litigation are precluded by the third and fourth arbitrations between Plaintiffs and 180s. The third arbitration addressed Plaintiffs' contention that 180s breached Section 5.9 of the Withdrawal Agreement by assigning certain rights without Plaintiffs' consent when 180s entered into the Asset Purchase Agreement with Defendants. (Dkt. 48-4, pg. 10). In resolving this issue, the arbitrator held "that the Asset Sale to Swimways did not constitute an assignment of [180s] rights and obligations as referred to in Section

5.9 of the Withdrawal Agreement. …thus only the assets included in the transaction were conveyed to Swimways." *Id.* The arbitrator unequivocally ruled that "[t]he Withdrawal Agreement was not one of the assets transferred pursuant to the Asset Sale, and [180s] remains responsible for any compensation owed to [Plaintiffs] under the Withdrawal Agreement." *Id.* Further, the arbitrator held that Defendants were not a successor to 180s and therefore did not assume obligations present in the Withdrawal Agreement. *Id.* at pg. 11.

Plaintiffs also brought claims in arbitration stemming from purported fraudulent representations and filings made to the United States Patent and Trade Office. The ruling in the fourth arbitration reiterated the third arbitrator's findings by unequivocally stating that all intellectual property rights in the Key Products at issue were transferred to Defendants by way of the Asset Purchase Agreement. (Dkt. 48-6, pgs. 3-4). The fourth arbitrator further held that Plaintiffs retained no rights or interests in the intellectual property and 180s was "entitled to sell, license, practice or even abandon the intellectual property." *Id.* at pg. 4. Relatedly, Count IV of Plaintiff's fourth arbitration claim sought damages due to 180s allegedly filing fraudulent documents with the USPTO. *Id.* at pgs. 6-7. The arbitrator found no evidence to support this claim. *Id.* at pg. 7. Though, even when the arbitrator assumed the fraud allegations to be true, he found that Plaintiffs were still not entitled to relief. *Id.*

### B. Claims in Plaintiffs' First Amended Complaint

Here, Plaintiffs' First Amended Complaint is premised on the same foundational issues previously decided in arbitration. For example, Plaintiffs argue in their Complaint that Swimways assumed royalty obligations. *See e.g.,* (Dkt. 19, ¶¶ 85, 86 ("Defendant Swimways assumed the terms the Withdrawal Agreement when purchasing the assets transferred with the Withdrawal Agreement. … Swimways assumed the obligation of paying royalties to Matlin and Waring pursuant to the Withdrawal Agreement."). Indeed, this presumption is fundamental and essential to each one of the three Counts in the First Amended Complaint. In order for Defendants to have assumed an obligation of paying royalties to Plaintiffs, they would have had to assume the obligations outlined in the Withdrawal Agreement—a possibility the third arbitrator considered and squarely disposed of. (Dkt. 48-4, pg. 11) ("While certain assets of [180s] were transferred in conjunction in the Asset Sale, the Withdrawal Agreement was not one of them…"). To avoid any doubt, the issue was reinforced in the fourth arbitration where the arbitrator concluded that "[t]he Withdrawal Agreement distinguishes between the transfer of assets (e.g., the Key Product assets and related intellectual property with 'rights and obligations' of the Withdrawal Agreement." (Dkt. 48-6, pg. 3). The arbitrator went on to find that "(1) 180s owned all rights in the Key Product IP, (2) 180s had the right to transfer its assets (e.g., Key Products and related intellectual property) to Swimways, (3) 180s transferred the Key Product assets and related intellectual property to Swimways, and (4) the [Plaintiffs] were fully compensated for the transfer of the Key Products and related intellectual property to Swimways." *Id.* These rulings make clear that

180s, not Defendants, is the entity responsible for remaining payment obligations, if any, to Plaintiffs. As a result, collateral estoppel prevents Plaintiffs from attempting to relitigate the issue of whether Defendants owe them payments under the Withdrawal Agreement.

Plaintiffs also assert in their First Amended Complaint that Defendants engaged in fraudulent conduct in certain filings made with the USPTO. *See e.g.,* (Dkt. 19, ¶ 73) ("In fact, Swimways knew it never had full ownership of the rights in Key Product IP obtained by fraud and forgery…"). This claim is plainly foreclosed by the previous arbitrations. As discussed above, arbitration unequivocally established that Plaintiffs retained no ownership interest in any intellectual property associated with the Key Products, and therefore even if there was any merit to Plaintiffs' allegations of fraudulent conduct, they could still not plausibly state a claim for fraud. (Dkt. 48-6, pgs. 3-4, 6-7). As such, collateral estoppel likewise precludes Plaintiffs' fraud allegations in the First Amended Complaint.

The above arbitral findings fit neatly within the four prongs of collateral estoppel and undercut Plaintiffs' ability to bring their present claims in good faith. Whether Defendants assumed royalty obligations to Plaintiffs in the Asset Purchase Agreement was involved in the third arbitration, it was actually litigated through summary judgment proceedings, it was essential to the determination of Count II of Plaintiffs' Statement of Claims, and Plaintiffs were fully represented in the previous action. *Mahajan,* 877 F.3d at 270. The same analysis holds true when considering

the effect of the third and fourth arbitrations on Plaintiffs' fraud claim in their First Amended Complaint.

**III. Appropriateness of sanctions**

A reasonable inquiry by Plaintiffs and their counsel would have revealed that the claims they sought to bring in the First Amended Complaint were precluded by the plain language of the governing contracts as noted on multiple occasions in binding arbitration. *See Bethesda Lutheran Homes & Servs., Inc. v. Born,* 238 F.3d 853, 859 (7th Cir. 2001) ("[W]hatever the possible merit of the suit, it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata."). Choosing to proceed with their federal litigation in the face of such authority warrants sanctions. "Bringing a claim that is barred by res judicata is sanctionable." *Singh v. Curry,* 69 F.3d 540 (7th Cir. 1995) (citing *Cannon v. Loyola University of Chicago,* 784 F.2d 777, 782 (7th Cir. 1986)). Even a cursory review of the arbitration rulings would have revealed Defendants owed no royalties to Plaintiffs and further, even if Defendants engaged in fraudulent transactions before the USPTO, Plaintiffs retained no interest in that intellectual property that would give rise to a plausible claim for fraud. Plaintiffs' suit was precluded by the plain language of the contracts, as determined in binding arbitration, but also by clear and direct holdings in those proceedings. Opting to undertake this groundless lawsuit was objectively unreasonable and necessitates sanctions. *See Cuna,* 443 F.3d at 560.

Defendants are entitled to recover fees and costs relating to the preparation and filing of their Motion to Dismiss and Motion for Sanctions. The Court finds this

remedy is appropriate and sufficient to deter repetitive conduct from Plaintiffs and other similarly situated parties. *See* Fed. R. Civ. P. 11(c)(4). Given Plaintiffs' litigious history and dogged pursuit of previously discharged claims, such an award is both reasonable and proportionate to the harm caused to Defendants. *See Scruggs v. Wauwatosa Savings Bank,* 723 Fed.Appx. 349, 350-51 (7th Cir. 2018).

## CONCLUSION

For the reasons stated within, Defendants' Motion for Sanctions is granted. Plaintiffs' claims were precluded by collateral estoppel and had no sound, good faith basis. Plaintiffs' First Amended Complaint remains dismissed without prejudice. Defendants are directed to file a detailed accounting of the attorneys' fees and costs associated with the preparation and filing of Defendants' Motion to Dismiss (Dkt. 26) and Motion for Sanctions (Dkt. 48) within 14 days of the entry of this Order.

_____
Virginia M. Kendall
United States District Judge

Date: June 10, 2019